ANDREW J. CUMMINGS, Appellant, *v.* HENRY RUCKERT, ET AL., Respondents.

January 2, 1884.

EQUITY—CREDITOR'S BILL—CONTRACTS—PUBLIC POLICY—FRAUD.—The profits of a contract obtained in the name of a third person who is pecuniarily irresponsible, can not be subjected to the payment of a judgment previously obtained against the ostensible contractor who had obtained no credit by reason of the contract.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

BROADHEAD & HAEUSSLER, for the appellant: The fact that the transaction being not merely *malum prohibitum*

but against public policy bars the interpleader from equitable relief. — *Kitchen* v. *Greenabaum*, 61 Mo. 116. As between parties who enter into a fraudulent combination, no relief will be granted in equity ; and this is an equitable proceeding by Stifel against the city. — *Warburtor* v. *Alsen*, 1 McLean, 460 ; *Miller* v. *Marble*, 21 Ill. 152 ; *Westfall* v. *Jones*, 23 Barb. 9 ; *Bolt* v. *Rodgers*, 3 Paige Ch., 154. This contract being clearly an imposition on third persons, is void. — Story on Part., sect. 6 ; 1 Story Eq. Jur. sects. 222–240. — *Davison* v. *Seymour*, 1 Bosw. 88. This contract with the city is a matter of personal trust and confidence and is not assignable. — *Boykin* v. *Campbell*, 9 Mo. App. 495.

Geo. A. Castleman, for the respondents. The title to the $550 deposited with the city was always in Stifel, and he could claim it from any naked bailee in possession, with or without notice of his title. — *First National Bank* v. *Mason*, 11 Cent. L. J. 244 ; *Central National Bank*, v. *Connecticut Mutual Life Ins. Co.* 13 Cent. L. J. 410. Stifel's title or right to the fund, is perfect as against the other parties thereto, by reason of the assignment thereof to Stifel by Ruckert, as evidenced by his order upon back of the receipt which operated as an assignment of the entire fund. — *Hydraulic Press Brick Co.* v. *Saville*, 1 Mo. App. 96.

Bakewell, J., delivered the opinion of the court.

The petition in this case alleges that plaintiff is a judgment creditor of defendant Ruckert to the amount of $176.66 ; that ever since the judgment, Ruckert has had no property subject to levy ; that Ruckert has deposited with defendant, the city of St. Louis, in the hands of its treasurer, $550, under letting contract No. 698, which money is due and payable to Ruckert ; that the city is not subject to garnishment, and that plaintiff has no adequate legal remedy. The prayer is, that the city be required to pay into court,

of the fund of $550, so much as will satisfy plaintiff's judgment.

The original defendants, the city and Ruckert, filed general denials. Stifel was made a defendant on his application, and in his interplea, alleged certain facts which will be set out below in the statement of the evidence. Plaintiff filed an answer to the interplea, putting in issue the material facts on which Stifel bases his claim to the fund.

The court found in favor of the interpleader; and the decree was, that, on return of a certain receipt, the city pay the money in question to him. Plaintiff alone appealed.

The bill of exceptions sets out the substance of the testimony as follows: —

Plaintiff offered evidence tending to prove the allegations of the petition as to the judgment and execution against Ruckert, and that he had no property subject to execution. The date of the judgment was August, 1873. It also appeared that Ruckert had several contracts with the city, for large sums, for public work, for the doing of which Stifel was his surety; that in July, 1881, Ruckert, in order to obtain a contract with the city, deposited with its treasurer $550, and took the following receipt therefor: "City Treasury, No. 288 — St. Louis, July 29th, 1881. Received of Henry Ruckert five hundred and fifty dollars, on account of contract deposit, letting number 698, for which I have given. quadruple receipt. J. S. Merrell, Treasurer." Indorsed: "City of St. Louis, J. S. Merrell, Treasurer, pay the amount for which the within is receipt, to Philip F. Stifel. Henry Ruckert." Also, that the said sum was still on deposit with the city when this action was brought; that defendant Ruckert, after said deposit was made, entered into contract and bond with the city, with Stifel as his surety; and that the money is in the hands of the city, to be returned to Ruckert, or as the court may direct.

On behalf of the interpleader, both Stifel and Ruckert testified to the following state of facts. —

Ruckert and Stifel are brothers-in-law. Ruckert has been in Stifel's employ since 1874, as clerk, collector, and manager. Ruckert and Stifel hold each a power of attorney from the other. Stifel had so many contracts from the city in his own name, that he could not furnish the required bonds for more. He then, in order to become his own bondsman, caused Ruckert to make bids for public work in Ruckert's name. Ruckert would make the required deposit in his own name, and then Stifel would become his surety for the faithful performance of the work. After a contract was obtained, the bills for the work would be made out in the name of Ruckert as contractor. As the contract was not assignable, Ruckert would collect the bills, and turn the proceeds over to Stifel. This had been done in many cases and was still being done by them in the same way. The contract was really Stifel's, and not Ruckert's. Stifel owned the quarry. Stifel borrowed the $550 in question here, from a neighbor, and handed it to Ruckert as his book-keeper to make a deposit. Ruckert made this deposit for Stifel in Ruckert's name, and got the receipt and indorsed it over to Stifel. This action was then brought, after which Ruckert entered into the contract on which he had bid, with Stifel as his surety. Stifel, then went with his receipt to the city, and found when he presented the receipt, that the money had been stopped by this action; the city, on account of this suit, refused to pay the money either to Stifel or Ruckert. Under the regulations adopted by the city in such cases, the money became payable as soon as the contract was let and a satisfactory bond given. The contract was awarded to Ruckert, and he gave a bond satisfactory to the city; immediately thereafter Stifel presented to the city the receipt assigned as above and demanded the $550. The city refused payment to Stifel, on the ground of the pendency of the present suit.

This was all the testimony. To the testimony offered for defendants and the interpleader, plaintiff objected that it was incompetent, on the ground that it was against public policy to allow the parties to show a fraud practiced by them on the city to obtain public work in the name of a man who was not the real bidder or contractor, with the knowledge and consent of the surety who was the real contractor, thus fraudulently giving the city no security, and deceiving the officers and the public as to the principal and surety and the deposit.

It will be assumed for the purposes of this opinion, that the statements of Stifel and Ruckert represented the truth of the transaction to which they were parties. The circuit court so found, and this finding is a fair inference from all the testimony. The arrangement is one not improbable in itself. The receipt given by the city to Ruckert is not, of course, conclusive as to the ownership of the fund.

If, by placing the apparent ownership of this fund in the name of Ruckert, Stifel had enabled Ruckert to obtain from plaintiff the credit which led to the creation of the indebtedness which culminated in plaintiff's judgment, it might be urged that it would be inequitable, after the credit had been given on the faith of the apparent facts, to allow Ruckert or Stifel to set up the real truth of the transaction to defeat a recovery of the fund by the creditor, and that there would be an equitable estoppel. But nothing of that sort is pretended.

If the action of the circuit court, in admitting the evidence objected to, was erroneous, it must be so upon the sole ground that the arrangement between Stifel and Ruckert was a fraud upon the city which it would be against public policy to enforce, and which the courts, on this ground, would not give effect to. It is contended by appellant that the case stands as if Stifel, in an action by him, were endeavoring to recover this money from Ruckert. In that case, it is said, Ruckert must be allowed, though a fraudu-

lent trustee, to retain the trust fund as against the real owner, because that owner could not arrest his beneficial ownership of the fund except by showing his own fraud.

It is no where expressly stated in the evidence what was the character of the work which Ruckert contracted to do for the city. From the mention of the quarry, it would seem that it was stone work. It may have been the macadamizing of streets; and it is not to be presumed, in the absence of anything more explicit on the subject in the evidence, that the work was of a higher grade, or of a character in which the skill of the contractor was of more importance to the city than it would be in the case of a contractor for street paving.

We are unable to see what public policy requires that a contract for macadamizing the streets of a city must be let to a quarryman, or why the city should not be willing to let a contract for street paving to a man who was never engaged in, and knows nothing of, such work, if he gives good security for performing the work according to contract. It must be a matter of indifference to the city in such a case, that the contractor employs another man to carry out the contract. Such a contract is not let out, like the painting of a picture, with any view to the skill or proficiency in his art or mystery of the contracting party. B is a man of wealth, and desires to make money by the macadamizing of streets. To obtain a contract by which he can utilize his stone quarry in this way, he must make a temporary deposit with the city and give a satisfactory bond. He is unwilling to ask any one to become his surety; and, to obviate this difficulty, B agrees with A that the contract with the city shall be made with A, that B will place in A's hands the money for the required deposit, and will go upon the bond that A must give to the city in the matter. B, meanwhile, is to be the person really interested in the contract, and, as between A and B, the tax bills, when issued, are to belong to B. I can

not conceive how the city can be injured by this. I can see that such an arrangement may be of benefit to the city, as increasing the number of possible bidders for street work. If, by such an arrangement, some one is induced to give to A a credit which he would otherwise not have, that person may very well claim that, as against him, neither A nor B shall say that the contract and its profits are not the property of A but of B. But, why should the city complain? The city, in the present case, does not complain. It is willing to pay this money to Stifel or to Ruckert, as the court may direct, so that it is held harmless in doing so. We see no fraud upon the city in the transaction. The city makes its contract with Ruckert, and Stifel becomes his surety. The legal rights of the city are precisely what the papers show them to be. She holds Stifel as surety, and Ruckert as principal. She is not to be supposed to be concerned whether the work is done by Stifel or by Ruckert, so that it is well done ; or whether the rock comes from Stifel's quarry or from Ruckert's, provided it comes up to contract; or, whether the money deposited with her until the bond is given, was, as between him and some one else, the money of the depositor or not, provided it was his at the time, in such a sense as not to affect the city's right to hold it as her own so long as she might do so according to the terms of her agreement.

We do not see that the facts in evidence show any fraud upon the city. If the witnesses are to be believed, there was no fraud upon plaintiff, who ought not to take Stifel's money to pay Ruckert's debts, unless Stifel, by giving to Ruckert an apparent ownership, helped him to contract the debt by obtaining a credit which he would otherwise not have had.

We think the judgment should be affirmed. It is so ordered. All the judges concur.